UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

GREGORY TUCKER,

                Plaintiff,

v.                                          Case No. 25-cv-937-pp

TRACEY THOMPSON, *et al.*,

                Defendants.

---

**ORDER DENYING AS UNNECESSARY PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 8), RESERVING RULING ON PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION (DKT. NO. 2) AND TO APPOINT COUNSEL (DKT. NO. 5) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Gregory Tucker, who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants provided him inadequate medical treatment. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 8, screens his complaint, dkt. no. 1, and reserves ruling on his motions for a preliminary injunction and to appoint counsel, dkt. nos. 2, 5.

I.    **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 8)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the

plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On July 11, 2025, the court received the full $405 civil case filing fee. Five days later, on July 16, 2025, the court received the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 8. Because the plaintiff already has paid the full filing fee, he does not need the court's permission to proceed without prepaying the fee. The court will deny this motion as unnecessary.

**II.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include

2

"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint names as defendants Nurse Practitioner Tracy Thompson and Health Services Unit (HSU) Managers K. Pelky and W. Borgen. Dkt. No. 1 at 1–3. The plaintiff alleges that Thompson has been his medical provider since he arrived at Oshkosh. Id. at 2. But the plaintiff says that from January 2023 to January 2024, Thompson saw him only three times for back pain, which she

suggested was because of his weight. Id. She told him during the second appointment that she would schedule him for "another injection." Id. But when the plaintiff went for his appointment in October 2023, he received only a consultation and no injection. Id. at 2, 4.

Later in 2023, the plaintiff complained of "severe pain and numbness and that [he] had fallen a few times." Id. at 4. Thompson prescribed him an oral steroid as a temporary measure, but the plaintiff's pain and numbness returned after he stopped taking them. Id. The plaintiff says that he received "an injection" in January 2024 for the pain, which interfered with his work and daily activities. Id. He also received a walker and a lower-tier restriction, but he later was moved to a unit that was farther from his worksite even though the HSU knows he has difficulty walking long distances. Id.

The plaintiff alleges that in April 2024, he received another injection, and Thompson told him that she would schedule another immediately after that appointment because "this one may not last long, which it did not." Id. The plaintiff says that he did not again see Thompson until June or July of 2024, and he says that during that appointment Thompson told the plaintiff that there were other incarcerated persons "with life threatening illnesses and dying who take priority over [his] issues." Id. at 4–5.

In October 2024, the plaintiff began to have difficulty lying on his left side, so he wrote a request to the HSU about a medical mattress. Id. at 5. He says Thompson denied this request without consulting with "the Medical Director/Committee." Id. In February 2025, the plaintiff again wrote to the

4

Case 2:25-cv-00937-PP    Filed 08/19/25    Page 4 of 13    Document 11

HSU complaining about his pain, and Thompson responded and told him that his "next injection was in the future." Id. Thompson also informed the plaintiff that the prison does "not use narcotics for chronic pain." Id. But the plaintiff insists that other incarcerated persons at Oshkosh "take Lyrica for chornic [*sic*] pain." Id. Thompson suggested prescribing the plaintiff Oxcarbazepine because the plaintiff's other medications (Celecoxib and Acetaminophen) were ineffective. Id. The plaintiff asked for this medication, but Thompson did not order it until four months later. Id. The plaintiff alleges that he received another injection on April 15, 2025, and that he was scheduled to see Thompson later that month. Id. But he did not see her until June 2025. Id.

The plaintiff says that in January 2024,[1] he wrote a request about his pain and about "the indifference of Ms. Thompson." Id. In response, Pelky told the plaintiff that he had an upcoming injection and an order for an MRI. Id. But the plaintiff says that he again received only a consultation. Id. Pelky told the plaintiff to "utilize current plan of care" and assured him that the HSU was taking his condition seriously. Id. Yet the plaintiff says that he had to wait fifteen months between injections for his chronic pain. Id. In March 2025, Borgen responded to another of the plaintiff's complaints about his care and told him to follow up with Thompson. Id. Borgen also suggested that the plaintiff "continue current plan of care" with his provider. Id. The plaintiff says that he attempted to work with Thompson and requested injections three times

---

[1] The plaintiff may have meant to write January 2025.

per year, "which [he is] allowed due to the length of time the injection[s] are predicted to last." Id. at 6. But he still did not receive timely care. Id.

In April 2025, the plaintiff filed an institutional complaint about his medical treatment. Id. The complaint examiner affirmed the complaint, and the reviewing authority agreed with that disposition. Id. The plaintiff asserts that Thompson, Pelky and Borgen denied him proper medical care and failed to adequately treat his chronic pain with steroid injections. Id. He claims that their actions "were done sadistically and maliciously" in violation of his rights under the Eighth Amendment. Id.

The plaintiff seeks a declaratory judgment that the defendants violated his rights. Id. at 7. He also seeks a preliminary injunction requiring the defendants "to schedule prompt appointments for [his] injections and to cease their unconstitutional and unlawful practices." Id. Finally, the plaintiff seeks nominal, compensatory and punitive damages. Id. at 7–8.

   C.   Analysis

The court analyzes the plaintiff's allegations about the denial of proper medical care under the Eighth Amendment. See Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter,

836 F.3d 722, 728 (7th Cir. 2016) (*en banc*) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). A prison official shows deliberate indifference when she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776.

The plaintiff's allegations of severe and chronic pain are sufficient to satisfy the objective component. Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002). The question is whether the plaintiff has alleged sufficient facts to show that each defendant was aware of but exhibited deliberate indifference to his chronic pain.

The plaintiff alleges that from January 2023 through at least June 2025, he complained to his medical provider—Thompson—about chronic back pain. He says that although Thompson did schedule him multiple times for steroid injections, some of these appointments resulted only in a consultation. He says that even when he received injections, the pain relief did not last long, and that he received the injections far less often than he could have. The plaintiff says that he told Thompson about his continuing pain, and that she refused to prescribe him medication like Lyrica, even though other incarcerated persons at Oshkosh received that medication. He alleges that Thompson prescribed him Oxcarbazepine, but that she delayed ordering the medication for four months. He also says that she denied his request for a medical mattress without consulting with the medical director.

Taken as true at the screening stage, the plaintiff's allegations show that Thompson knew about the plaintiff's pain and that she provided him varied

treatments during the two-and-a-half-year period alleged in the complaint. But these allegations fall short of demonstrating that Thompson was deliberately indifferent to the plaintiff's pain. For example, "the Eighth Amendment does not entitle incarcerated patients to their preferred pain medication." Arce v. Wexford Health Sources Inc., 75 F.4th 673, 681 (7th Cir. 2023). That means that Thompson did not violate the plaintiff's rights by prescribing him a different medication than that prescribed for other patients. Her decision not to give the plaintiff the same medication could suggest that she exercised her medical judgment when deciding which medications to prescribe, and exercising medical judgment does not show deliberate indifference. See Zaya v. Sood, 836 F.3d 800, 805 (7th Cir. 2016). The plaintiff alleges that Thompson denied his request for a medical mattress, but he alleges nothing to suggest that she did so maliciously or to worsen his condition. Nor was Thompson indifferent by prioritizing care for patients with more severe illnesses or conditions than the plaintiff. See Myrick v. Gohde, Case No. 17-CV-603, 2020 WL 5074411, at *17 (W.D. Wis. Aug. 27, 2020) (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)) (noting that "a difference of opinion about prioritizing medical treatment" does not "amount[] to proof of deliberate indifference").

The plaintiff also alleges that Thompson did not refer him for steroid injections three times a year, even though those injections temporarily helped his pain and he was able to receive them more frequently. But his allegations do not suggest that she intentionally denied him these treatments. It is just as

8
Case 2:25-cv-00937-PP    Filed 08/19/25    Page 8 of 13    Document 11

possible that Thompson forgot to schedule the plaintiff for these injections sooner, just like she may have forgotten to order the plaintiff's Oxcarbazepine pain medication. Her forgetfulness could be evidence of negligence or perhaps medical malpractice but not of deliberate indifference. See Williams v. Ortiz, 937 F.3d 936, 942 (7th Cir. 2019); see also Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996) ("[A] defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation."). The plaintiff was dissatisfied with the care he received, but his allegations are insufficient to demonstrate that Thompson "sadistically and maliciously" or intentionally disregarded the plaintiff's pain and provided substandard care in violation of the Eighth Amendment.

The plaintiff also seeks to hold HSU Managers Pelky and Borgen liable for Thompson's allegedly deficient medical treatment. He does not allege that Pelky or Borgen treated him personally; he seeks to hold them responsible for their responses to his complaints about Thompson's care because they managed the HSU. But there is no vicarious liability for supervisors under §1983. Iqbal, 556 U.S. at 676. "Supervisors are responsible for what they do themselves, not for what their subordinates do." Day v. Subsecretario del Sistema Penitenciario Federal, 838 F. App'x 192, 193 (7th Cir. 2021). Nor does the plaintiff state a claim about his dissatisfaction with their responses to his complaints about Thompson. See Estate of Miller by Chassie v. Marberry, 847 F.3d 425, 428 (7th Cir. 2017) (explaining that a supervisor's "inaction following receipt of a complaint about someone else's conduct is not a source of

9

liability"). Even if there were vicarious liability under §1983, the court explained above why the plaintiff's complaint fails to state a claim of deliberate indifference against Thompson. That means that there is no misconduct for which Pelky and Borgen could be liable for failing to address. See Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005) (citing Fillmore v. Page, 358 F.3d 496 (7th Cir. 2004)).

The complaint does not allege sufficient facts to state a claim against any defendant under the Eighth Amendment. But it is possible that if the plaintiff provided additional details about what happened, he could state such a claim. The court will give him an opportunity to amend his complaint to address the problems the court has identified and to better explain his claims.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to give the court and each defendant notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give

rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He instead must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

## III. The Plaintiff's Other Motions

The plaintiff filed motions for a preliminary injunction, dkt. no. 2, and to appoint counsel, dkt. no. 5. Because the court is dismissing the complaint and giving the plaintiff an opportunity to file an amended complaint, the court will reserve ruling on these motions. If the plaintiff timely files an amended complaint, and if the amended complaint alleges facts that state a valid federal claim, the court will review the plaintiff's motions for a preliminary injunction and for appointment of counsel. If the plaintiff does not timely file an amended complaint, or if the court screens the plaintiff's amended complaint and concludes that it, too, does not state a claim, the court will deny these motions as moot. The plaintiff does not need to refile these motions or take any other action on them.

## IV. Conclusion

The court **DENIES AS UNNECESSARY** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 8.

11

The court **RESERVES RULING** on the plaintiff's motions for a preliminary injunction and to appoint counsel. Dkt. Nos. 2, 5.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive* it by the end of the day on **September 19, 2025**. If the court receives an amended complaint by the end of the day on September 19, 2025, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the end of the day on September 19, 2025, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 19th day of August, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**