UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GREGORY TUCKER,

                        Plaintiff,

v.                                                        Case No. 25-cv-937-pp

TRACEY THOMPSON, *et al.*,

                        Defendants.

**ORDER DENYING PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION (DKT. NO. 2) AND TO APPOINT COUNSEL (DKT. NO. 5) AND SCREENING AMENDED COMPLAINT (DKT. NO. 12) UNDER 28 U.S.C. §1915A**

On August 19, 2025, the court screened plaintiff Gregory Tucker's complaint under 42 U.S.C. §1983 and determined that it failed to state a claim for relief. Dkt. No. 11. The court dismissed the complaint but gave the plaintiff "an opportunity to amend his complaint to address the problems the court has identified and to better explain his claims." Id. at 10. The court reserved ruling on the plaintiff's pending motions for a preliminary injunction and to appoint counsel pending his filing of an amended complaint. Id. at 11.

On September 16, 2025, the court received the plaintiff's amended complaint. Dkt. No. 12. This decision resolves the plaintiff's motions for a preliminary injunction and to appoint counsel, dkt. nos. 2, 5, and screens his amended complaint.

**I. Screening the Amended Complaint**

    **A.**    Federal Screening Standard

As the court explained in the previous order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental

1

Case 2:25-cv-00937-PP    Filed 10/22/25    Page 1 of 13    Document 13

entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The amended complaint, like the original names as defendants Nurse Practitioner Tracy Thompson and Health Services Unit (HSU) Managers K. Pelky and W. Borgen. Dkt. No. 12 at 1–2. The plaintiff realleges that Thompson has been his medical provider since he arrived at Oshkosh Correctional Institution, but that she denied and delayed medical care for his radiculopathy from January 2023 through January 2024. Id. at 3. He alleges that Thompson knew that for three years, while at Green Bay Correctional Institution, the plaintiff had been treated for this chronic condition by receiving steroid injections to reduce swelling in his spinal disc. Id. He asserts that by "denying and delaying these injections for a year and a half on 2 separate occasions Ms. Thompson has allowed [his] condition to become so debilitating" that he had to use a walker and wheelchair. Id. at 3–4.

The plaintiff alleges that he has tried to work with Thompson and the HSU to receive appropriate care, but that he has continued to encounter delays. Id. at 4. For example, he says that at one point Thompson suggested placing him on a new medication, but that she then delayed prescribing it for four months despite the plaintiff's "repeated inquiries." Id. The plaintiff submitted medical requests about his deteriorating condition, but staff responded that his provider "needed to submit the request to the Medical Director/Committee for approval." Id. He says that Thompson instead "made a unilateral decision to deny [his] request on behalf of the Medical Director/Committee." Id. He asserts that this decision disregarded "the severity of [his] condition" and further delayed his treatment. Id. The plaintiff alleges that Thompson knows the steroid injections should be

administered every two-and-a-half or three months, but that she has not prescribed him injections consistent with that timing. Id. at 5. He says that despite knowing about his condition and symptoms for years, Thompson "has failed to remedy it or take action to provide [him] with medically necessary treatment." Id.

The plaintiff alleges that in January 2024, he wrote a complaint about his medical treatment to Pelky, and that she responded by informing him of his upcoming appointment and telling him that the "HSU takes all patient conditions seriou[s]ly." He asked to switch to another provider, "but nothing was done" by Pelky. Id. The plaintiff alleges that in March 2025, he again wrote to the HSU about his same concerns, and HSU Manager Borgen responded by reminding him of his upcoming appointment and telling him to "follow up with Provider." Id. at 6. He alleges that Borgen knew that the plaintiff had been complaining about Thompson's treatment for years, but that Borgen and Pelky took "no action to remedy the delays in treatments or [his] complaints." Id. He claims that Pelky and Borgen knew that Thompson "was not carrying out her duties" or following "established poloicies [*sic*]," yet they continued to disregard his symptoms. Id.

The plaintiff says that in April 2025, he filed an institutional complaint against Thompson, which a complaint examiner affirmed. Id. He alleges that his daily activities "have significantly been affected" by his ineffective treatment, and that he is unable to exercise or walk longer than ten minutes. Id. at 7. He has been unable to lose weight, which is worsening his condition and affecting his sleep. Id. He claims that the defendants' actions (or inaction) have violated his rights under the Eighth Amendment and deprived him of necessary medical treatment. Id. He seeks a declaratory judgment that the defendants violated his

rights. Id. at 8. He also seeks a temporary, preliminary injunction requiring the defendants "to order and sc[h]edule prompt appointments for [his] injections" and to "cease their unconstitutional and unlawful practices." Id. Finally, the plaintiff seeks nominal, compensatory and punitive damages. Id. at 8–9.

   C.   Analysis

The court explained in the previous order that it analyzes the plaintiff's allegations about the denial of proper medical care under the Eighth Amendment. Dkt. No. 11 at 6 (citing Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019)). The court explained that to state a valid Eighth Amendment claim, "the plaintiff must allege both that he 'suffered from an objectively serious medical condition' and that the defendants were 'deliberately indifferent to that condition.'" Id. (quoting Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*). The court found—and continues to find—that the plaintiff's allegations of severe and chronic pain satisfy the objective component. Id. at 7 (citing Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002)).

The court previously determined that the plaintiff's allegations against Thompson amounted to disagreement with her course of treatment, dissatisfaction with not being prioritized for treatment at Oshkosh and possible negligence or medical malpractice. Id. at 7–9. The court explained that none of those allegations amounted to an Eighth Amendment violation. Id. (citing Arce v. Wexford Health Sources Inc., 75 F.4th 673, 681 (7th Cir. 2023); Williams v. Ortiz, 937 F.3d 936, 942 (7th Cir. 2019); Zaya v. Sood, 836 F.3d 800, 805 (7th Cir. 2016); and Myrick v. Gohde, Case No. 17-CV-603, 2020 WL 5074411, at *17 (W.D. Wis. Aug. 27, 2020)).

In the amended complaint, the plaintiff repeats many of the allegations from his original complaint. But he newly alleges that the issues with Thompson went beyond a disagreement or dissatisfaction with her treatment methods. For example, he alleges that Thompson proposed a medication in place of the steroid injections that he had been receiving, but that she then delayed providing that medication to him for months without explanation. He alleges that even after he received the new medication, his condition continued to deteriorate. The plaintiff says that Thompson unilaterally denied his requests for alternate treatment instead of referring his requests to the medical director. Although failure to follow institutional protocol is not evidence of deliberate indifference, see Hunter v. Mueske, 73 F.4th 561, 567 & n.1 (7th Cir. 2023), it does suggest a pattern of Thompson taking the easier route when treating the plaintiff. Persisting in an ineffective course of treatment may constitute deliberate indifference, especially when doing so is "'likely to seriously aggravate'" an incarcerated person's medical condition. Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005) (quoting Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996)). Not all of Thompson's decisions suggest that she was indifferent to the plaintiff's medical condition. But the amended complaint alleges enough for the court to infer—at least for the purpose of screening— that Thompson was not exercising her medical judgment when treating the plaintiff's chronic pain. The court will allow the plaintiff to proceed on an Eighth Amendment claim against Thompson.

The court explained in the previous order that HSU Managers Pelky and Borgen could not be held liable "for their responses to [the plaintiff's] complaints about Thompson's care" simply because they managed the HSU. Dkt. No. 11 at 9 (citing Iqbal, 556 U.S. at 676; Day v. Subsecretario del

Sistema Penitenciario Federal, 838 F. App'x 192, 193 (7th Cir. 2021)). The plaintiff alleges nothing new against Pelky and Borgen. He reiterates that these defendants did not respond adequately to his complaints about Thompson's treatment and that they failed to ensure that Thompson followed established policies. But as the court has explained, a violation of institutional policies does not state a claim under §1983. Hunter, 73 F.4th at 567 & n.1. And Pelky and Borgen's inaction after receiving his complaint "is not a source of liability." See Estate of Miller by Chassie v. Marberry, 847 F.3d 425, 428 (7th Cir. 2017). The amended complaint, like the original complaint, does not state a claim against defendants Pelky and Borgen. The court will dismiss them from the case.

## II. The Plaintiff's Motions

The court reserved ruling on the plaintiff's motions for a preliminary injunction, dkt. no. 2, and to appoint counsel, dkt. no. 5, pending receipt and screening of his amended complaint. Because the court is allowing the plaintiff to proceed on an Eighth Amendment claim against defendant Thompson, the court now will address these motions.

### A. Motion for Preliminary Injunction (Dkt. No. 2)

This document is not a separate motion for a preliminary injunction. The clerk's office docketed the plaintiff's complaint twice—once as a complaint and a second time as a motion for a preliminary injunction, relief that the plaintiff requested in his original complaint and again requested in his amended complaint. Dkt. No. 12 at 8.

To obtain preliminary injunctive relief, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists and (3) he will suffer irreparable harm without

the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is not appropriate to guard against the "mere possibility of irreparable injury." Orr v. Shicker, 953 F.3d 490, 501 (7th Cir. 2020) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

The court will deny the plaintiff's request for a preliminary injunction because he has not satisfied these requirements. The plaintiff asks for the injunction as part of the relief he seeks in this lawsuit. He does not explain how (or why) he will succeed on his claim, why damages would not be an adequate remedy or what irreparable harm he will suffer if the court denies his request for injunctive relief. That the court is allowing the plaintiff to proceed beyond screening does not mean he is likely to succeed; the standard for screening is low, and at the screening stage the court construes the plaintiff's allegations in his favor. The standard for prevailing on the substance of his claim is much higher; the plaintiff will need to submit *evidence* proving his allegations or at least demonstrating that a jury could rule in his favor. Because the plaintiff has not satisfied any of the criteria for a preliminary injunction, the court will deny his request.

If the plaintiff again asks for this extraordinary relief, he must be able to satisfy the above criteria and to show that "the balance of harms" to each party and to the public interest weighs in favor of granting him the relief he seeks. Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020). The court also advises the plaintiff that under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds

requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(1). Any future requests for preliminary injunctive relief that the plaintiff files must comport with these requirements.

     B.     <u>Motion to Appoint Counsel (Dkt. No. 5)</u>

The plaintiff asks the court to appoint him a lawyer because he is unable to afford one on his own, the issues in his case "are complexed [*sic*]," he has little knowledge of civil law and he has been unable to retain counsel on his own. Dkt. No. 5. The plaintiff attached letters from two firms that declined to represent him. Dkt. No. 5-1. He says that those are the only firms or attorneys who responded to his requests for counsel. Dkt. No. 5.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. <u>Navejar v. Iyola</u>, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); <u>Ray v. Wexford Health Sources, Inc.</u>, 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" <u>Henderson v. Ghosh</u>, 755 F.3d 559, 564 (7th Cir. 2014) (quoting <u>Olson v. Morgan</u>, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" <u>Eagan v. Dempsey</u>, 987 F.3d 667, 682 (7th Cir. 2021) (quoting <u>Pruitt v. Mote</u>, 503 F.3d 647, 654–55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. <u>Pickett v. Chi. Transit Auth.</u>, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be

9

Case 2:25-cv-00937-PP   Filed 10/22/25   Page 9 of 13   Document 13

determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. Id. The court should also consider how well the plaintiff articulated his case to the prospective lawyer. Id. Where a plaintiff "conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." Id.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering,

preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff says that he attempted to obtain counsel on his own, but only two firms responded to his requests and declined to help him. He does not say how many attorneys or firms he wrote to, and the letters he included say only that the firm will not represent the plaintiff. Neither letter says anything about the merits of his case or the reasons for declining to represent him. The court infers that the plaintiff contacted at least one additional lawyer or firm, and that he has been unsuccessful in obtaining legal assistance on his own. This is sufficient to satisfy the first element identified above.

But the plaintiff has not satisfied the second element. Unfortunately, the plaintiff's concerns about litigating this case on his own are not unique to him or to litigation filed by incarcerated persons. As the court discussed above, nearly all self-represented litigants would benefit from having legal assistance, but there are not enough attorneys in the community who are able and willing to take these volunteer assignments. The plaintiff must be able to show why he is one of those litigants most in need of assistance to litigate his case adequately before the court will attempt to recruit an attorney for him.

The plaintiff has not met that standard. The plaintiff's unfamiliarity with civil law is not reason to provide him counsel. His complaint and amended

complaint show not only that the plaintiff knows which facts are important to the issues in his case but also that he is able to coherently articulate the legal bases for his claims based on the facts. The plaintiff says that he is not familiar with civil law, but his amended complaint contains many statements of law common in civil cases brought by incarcerated persons. He explains why he believes that Thompson's delays and denial of treatment constitute deliberate indifference, and he homes in on Thompson's alleged decision to pick a less effective treatment option. That is the exact claim on which the court is allowing him to proceed, a claim that he did not articulate in his original complaint. That suggests that the plaintiff did his research and learned more about his legal claim before filing his amended complaint. It also suggests that he is capable of litigating on his own at this point in the proceedings.

At this early stage of the case, the court finds that the plaintiff appears competent to litigate his claims on his own. As the case progresses, the legal and factual issues may become too complex for him, his circumstances may change or he may find himself unable to obtain the information he believes he needs to prove his claims. The court will be flexible and give the plaintiff additional time to meet his deadlines. But if the plaintiff still believes that he is incapable of adequately litigating this case on his own, it may be appropriate to recruit counsel to represent him. The court will deny without prejudice his request for appointment of counsel. That means the plaintiff may renew his request for an attorney later in this litigation.

### III. Conclusion

The court **DENIES** the plaintiff's motion for a preliminary injunction. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 5.

The court **DISMISSES** defendants K. Pelky and W. Borgen.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendant Tracey Thompson. Under the informal service agreement, the court **ORDERS** defendant Thompson to respond to the amended complaint within sixty days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

Dated in Milwaukee, Wisconsin this 22nd day of October, 2025.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**